# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
JOHN ALAN FAGAN, JR.,           )
                                )
            Plaintiff,          )
                                )
     v.                         )      1:20CV706
                                )
KILOLO KIJAKAZI,                )
Acting Commissioner of Social   )
Security,                       )
                                )
            Defendant.¹         )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, John Alan Fagan, Jr., brought this action pro se pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 14 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 16, 17; see also Docket Entry 18 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

¹ President Joseph R. Biden, Jr., appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 192-96), alleging a disability onset date of December 6, 2016 (see Tr. 192, 195). Following denial of that application initially (Tr. 62-79, 100-03) and on reconsideration (Tr. 80-99, 111-18), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 119-20). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing on March 13, 2019 (Tr. 41-61), during which Plaintiff amended his onset date to July 1, 2016 (see Tr. 44; see also Tr. 287). The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 8-21.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-7, 173-75), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings:

1. [Plaintiff] last met the insured status requirements of the . . . Act on September 30, 2018.

2. [Plaintiff] did not engage in substantial gainful activity during the period from his amended alleged onset date of July 1, 2016, through his date last insured of September 30, 2018.

. . .

3. Through the date last insured, [Plaintiff] had the following severe impairments: history of traumatic brain injury (TBI); pseudobulbar affect (PBA); plantar fasciitis/right foot disorder; obesity; anxiety with panic disorder; depression; and post-traumatic stress disorder (PTSD).

> . . .
>
> 4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 5. . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform medium work . . . except [he] can occasionally climb ladders. [He] is able to perform simple routine repetitive tasks in a stable environment at a nonproduction pace with occasional interpersonal interaction with co-workers and supervisors. He can occasionally tolerate public contact. [He] would be off-task less than 10 percent of an eight-hour workday. His concentration is greater than 2 hours out of [an] 8-hour workday.
>
> . . .
>
> 6. Through the date last insured, [Plaintiff] was unable to perform any past relevant work.
>
> . . .
>
> 10. Through the date last insured, considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [he] could have performed.
>
> . . .
>
> 11. [Plaintiff] was not under a disability, as defined in the . . . Act, at any time from July 1, 2016, the amended alleged onset date, through September 30, 2018, the date last insured.

(Tr. 13-21 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the

4

case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id.

5

(quoting 42 U.S.C. § 423(d)(1)(A)).[2]  "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition."  Id.  "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled."  Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps:  "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the [RFC] to (4) perform [the claimant's] past work or (5) any other work."  Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry.  For example,

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed.  The Supplemental Security Income Program . . . provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical."  Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[3] "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [government] . . . ."  Hunter, 993 F.2d at 35 (internal citations omitted).

6

"[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## B. Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) the ALJ erred by "g[iving] little weight . . . to [Plaintiff's primary care provider Lorna F.] Doviak[, PA's] statement that [Plaintiff] need[ed] a service dog" (Docket Entry 16 at 3 (citing Tr. 574)), and by "not consider[ing] the letter from Dr. [Rajeshree Dimkpa] . . . [who] stated in her letter that [Plaintiff] c[ould] keep [his] service dog Bailey with [him] everywhere [he went]" (id. at 4 (citing Tr. 575)); and

2) the ALJ should have adopted the testimony of the VE that "a service dog i[s] generally not tolerated in the work place" and "that jobs would be precluded from competitive employment if

---

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

Case 1:20-cv-00706-TDS-LPA   Document 19   Filed 11/29/21   Page 8 of 19

[Plaintiff] needed additional breaks or had anxiety or depression issues" (id. at 5 (citing Tr. 60)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (See Docket Entry 18 at 4-12.)

### 1. Opinions Regarding Need for Service Animal

Plaintiff's first assignment of error asserts that the ALJ erred by "g[iving] little weight . . . to [PA] Doviak['s] statement that [Plaintiff] need[ed] a service dog," because "[PA] Doviak saw the progression of [Plaintiff's] social and coping issues along with overall functioning in public and also prescribed Bailey [Plaintiff's] service dog as a new medication which is good evidence of need." (Docket Entry 16 at 3 (citing Tr. 574).) Plaintiff further faults the ALJ for "not consider[ing] the letter from Dr. [Dimkpa] . . . [who] stated in her letter that [Plaintiff] c[ould] keep [his] service dog Bailey with [him] everywhere [he went]" (id. at 4 (citing Tr. 575)), because Dr. Dimkpa "treated [Plaintiff] from the onset of treatment and had seen [him] on a weekly basis" (id.), as well as "prescribed [a] service dog . . . to treat [his] anxiety and other psychological issues hoping the change w[ould] help" (id. at 4-5). Those contentions do not warrant relief.

The treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R.

9

§ 404.1527(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. See 20 C.F.R. § 404.1527(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence of record. See 20 C.F.R. § 404.1527(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590 (emphasis added). Finally, statements from medical sources (and even treating sources) that a claimant qualifies as disabled or cannot work do not constitute "medical opinions as described in [§ 404.1527(a)(1)], but are,

10

instead, opinions on issues reserved for the Commissioner" and do not warrant controlling weight. 20 C.F.R. § 404.1527(d).[6]

a. <u>PA Doviak</u>

On April 9, 2019 (i.e., nearly four weeks after Plaintiff's hearing before the ALJ), PA Doviak signed a "To Whom It May Concern" letter which provides, in pertinent part, as follows:

> [Plaintiff] was seen in my clinic on 4/9/2019.
>
> [Plaintiff] is my patient, and has been under my care since 2017. I am intimately familiar with his history and with the functional limitations imposed by his emotional/mental related illness. He has been diagnosed with severe panic disorder, PTSD and PBA. He is currently being followed by psychiatry and neurology for his conditions.
>
> Due to this emotional/mental disability, [Plaintiff] has certain limitations related to social interaction/coping with stress/anxiety and overall functioning in public situations. In order to help alleviate these difficulties, and to enhance his ability to function independently, <u>he has sought a service dog, Bailey</u>. The presence of this animal is necessary for the emotional/mental health of [Plaintiff] because its presence will mitigate the symptoms he is <u>currently</u> experiencing.

(Tr. 574 (emphasis added).) The ALJ analyzed and weighed PA Doviak's above-quoted opinions as follows:

> The [ALJ] gives little weight to the letter completed submitted [sic] [by PA] Doviak[], treatment provider. [PA] Doviak wrote that [Plaintiff] requires a service dog

---

[6] For claims filed on or after March 27, 2017, the Commissioner has significantly amended the regulations governing opinion evidence. The new regulations provide that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. As Plaintiff filed his claim for DIB prior to March 27, 2017 (<u>see</u> Tr. 192-96), this Recommendation has analyzed Plaintiff's claim pursuant to the treating physician rule set out above.

11

> to alleviate stress and function independently. [Plaintiff]'s treatment note[s] do not contain any references of the need for a service dog <u>prior to the hearing</u> and this is inconsistent with his treatment notes. His treatment notes routinely show that he had adequate fund of knowledge, memory, insight; affect, mood, speech, eye contact, and grooming [(Tr. 478, 500, 502, 504, 506, 560, 562, 565, 569, 571, 573)]. Overall, he was able to interact with his treatment providers, and he was cooperative and pleasant [(Tr. 493, 495, 500, 502, 504, 506; 560, 567, 569, 573)].

(Tr. 19 (emphasis added) (internal parenthetical citation omitted).)

The ALJ did not err in his evaluation and weighing of PA Doviak's service animal opinion. In accordance with the applicable regulations, the ALJ discounted PA Doviak's opinion because 1) her own treatment notes did not reference Plaintiff's need for a service animal prior to the hearing, see 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that medical opinion."); see also Craig, 76 F.3d at 590 (holding that, "if a physician's opinion is not supported by clinical evidence . . ., it should be accorded significantly less weight"), and 2) the opinion lacked consistency with Plaintiff's other mental health treatment, which reflected largely normal mental status examinations, see 20 C.F.R. § 404.1527(c)(4) ("[T]he more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion."); see also Craig, 76 F.3d at 590 (finding

12

that, "if a physician's opinion . . . is inconsistent with other substantial evidence, it should be accorded significantly less weight").

Moreover, the record supports the ALJ's above-described findings.  With regard to the lack of support for PA Doviak's service animal opinion, although PA Doviak first treated Plaintiff in March 2016 (see Tr. 429-30), and first prescribed psychiatric medication in response to Plaintiff's complaints of anxiety, depression, and issues in public in October 2016 (see Tr. 427), PA Doviak did not offer her service animal opinion until April 9, 2019 (see Tr. 574), several weeks after Plaintiff's hearing with the ALJ and over six months after Plaintiff's date last insured for DIB (September 30, 2018).  In addition, PA Doviak indicated that the service dog would "mitigate the symptoms [Plaintiff] [wa]s currently experiencing," thus precluding the possibility that PA Doviak's opinion related back to the relevant period in this case.

Furthermore, although Plaintiff takes the position that PA Doviak "prescribed" a service animal for Plaintiff  (Docket Entry 16 at 3), PA Doviak's letter reflects that Plaintiff "sought a service dog," and does not indicate that he did so in response to PA Doviak's suggestion, recommendation, or prescription (Tr. 574 (emphasis added); see also Tr. 44 (ALJ's acknowledgment at outset of hearing on March 13, 2019, of presence of Plaintiff's service dog in hearing room), 283 (letter dated March 1, 2019, from

13

Plaintiff's attorney to ALJ originally assigned to hear Plaintiff's claim indicating that Plaintiff "utilizes a service dog who is registered with the United States Dog Registry" and "requesting to have the company of his service dog with him at his hearing"), 284-85 (service dog registration documents dated February 17, 2019)). Accordingly, the record supports the ALJ's decision to discount PA Doviak's service animal opinion, in part, because her own treatment records did not support that opinion.

The record also bears out the ALJ's finding that PA Doviak's service animal opinion lacked consistency with Plaintiff's other mental health treatment records. (See Tr. 19.) Those records document that Plaintiff repeatedly displayed good eye contact, cooperative behavior, no psychomotor agitation or retardation, appropriate appearance and grooming, normal speech and thoughts, intact judgment and insight, and normal cognition, memory, attention, and concentration. (See Tr. 472, 478, 480, 493, 495, 500, 502, 506, 560, 562, 567, 569, 571, 573.) Although clinicians at times documented anxious mood and affect (see Tr. 474, 483, 493, 495, 500, 502, 504, 506) and/or restlessness (see Tr. 470, 474, 504), those records do not reflect that Plaintiff lacked the ability to function independently outside of his home without the presence of a service animal. Moreover, on many occasions, Plaintiff's mood and affect remained normal. (See Tr. 472, 478, 480, 560, 562, 567, 569, 571, 573.)

14

b.  Dr. Dimkpa

Dr. Dimkpa signed a "To Whom It May Concern" letter on April 9, 2019, which stated that Plaintiff "can keep his service dog Bailey as a companion with him everywhere he goes." (Tr. 575.) The ALJ did not mention, evaluate, or weigh that statement in his decision. (See Tr. 11-21.) That omission, if error at all, qualifies as harmless under the circumstances presented here. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

As an initial matter, Dr. Dimkpa's statement that Plaintiff "can keep his service dog . . . with him everywhere he goes" likely does not qualify as a "medical opinion" under the regulations to which the ALJ must assign a specific weight, because the statement does not indicate that Plaintiff's mental symptoms render a service dog medically necessary, see 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his/her] symptoms, diagnosis and prognosis, what [he/she] can still do despite impairment(s), and [his/her] physical and mental restrictions.").

15

Even assuming, however, that Dr. Dimkpa's statement qualified as a "medical opinion" under Section 404.1527(a)(2), Plaintiff still cannot demonstrate prejudicial error arising from the ALJ's failure to weigh the statement. As discussed above, the ALJ provided two reasons, both supported by substantial evidence, for discounting PA Doviak's opinion that Plaintiff's mental symptoms necessitated a service dog, and that same reasoning would support the ALJ's rejection of Dr. Dimkpa's more ambiguous statement regarding a service animal.

In light of the foregoing analysis, Plaintiff's first assignment of error falls short.

## 2. VE Testimony

Lastly, Plaintiff maintains that the ALJ should have adopted the testimony of the VE that "a service dog i[s] generally not tolerated in the work place" and "that jobs would be precluded from competitive employment if [Plaintiff] needed additional breaks or had anxiety or depression issues." (Docket Entry 16 at 5 (citing Tr. 60).) Plaintiff "request[s] that this evidence from [the VE] be considered in final decision with heavy weight because [Plaintiff is] unable to go or do anything without Bailey [his] service dog due to [Plaintiff's] anxiety[,] depression[,] [OCD, PTSD, PBA,] and many other mental issues." (Id. at 5-6.) Plaintiff's argument misses the mark.

16

The VE provided the following testimony in response to hypothetical questions posed by Plaintiff's counsel:

> ATTY: . . . [I]f an individual is off task at least 20 percent of the day due to either extra breaks or just from anxiety and depression would that have any effect on their [sic] ability to maintain employment?
>
> VE: Yes, jobs would be precluded, competitive employment.
>
> ATTY: . . . [I]f we had an individual who required the companionship of a service animal without taking into consideration accommodations is that something that's generally tolerated in work place environments?
>
> VE: No.

(Tr. 60.) Notably, the VE provided that testimony in response to hypothetical questions containing restrictions, i.e., time off-task of <u>at least 20</u> percent and a <u>medically necessary</u> service animal, that the ALJ did not ultimately adopt. (See Tr. 16 (containing limitation to off-task time "<u>less than 10</u> percent of an eight-hour workday" and <u>no</u> service animal requirement (emphasis added)).) The ALJ labored under no obligation to adopt limitations in hypothetical questions posed by Plaintiff's counsel (or even by the ALJ himself) that the ALJ ultimately found unsupported by the record. See Hammond v. Apfel, 5 F. App'x 101, 105 (4th Cir. 2001) (holding "that the ALJ did not err in disregarding the VE's response to counsel's hypothetical" where, "[b]ased on an evaluation of the evidence, the ALJ was free to accept or reject restrictive hypothetical questions"); Davis v. Apfel, No. 97-1719,

17

162 F.3d 1154 (table), 1998 WL 559728, at *2 (4th Cir. 1998) (unpublished) (noting that, "[b]y presenting a hypothetical, the ALJ was not making findings of fact"); Woodlief v. Berryhill, No. 5:16CV191FL, 2017 WL 9478528, at *5 (E.D.N.C. Aug. 4, 2017) (unpublished) ("[A]n ALJ is permitted to ask a VE multiple hypotheticals, even if they are contradictory, as such hypothetical questions are not findings of fact, and it is entirely permissible for the ALJ to determine after the hearing which hypothetical is supported by the record."), recommendation adopted, 2017 WL 4164076 (E.D.N.C. Sept. 20, 2017) (unpublished). Moreover, as discussed above in the context of Plaintiff's first issue on review, the ALJ did not prejudicially err with regards to PA Doviak's service animal opinion and Dr. Dimkpa's service animal statement.

Put simply, Plaintiff's second issue on review fails to demonstrate a basis for remand.

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for [J]udgment [R]eversing [D]ecision (Docket Entry 16) be denied, that

Defendant's Motion for Judgment on the Pleadings (Docket Entry 17) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

November 29, 2021